**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| Timilon Corporation<br>24301 Walden Center Dr., Suite 300<br>Bonita Springs, FL 34134 | : <br> : <br> : <br> : <br> : | Case No.<br><br><br>Judge_____ |
| Plaintiff, | : <br> : | |
| v. | : <br> : | **COMPLAINT** |
| Empowerment Justice Center Corporation<br>c/o Statutory Agent, Capital Crescent<br>Business Associates<br>9103 Woodmore Centre Dr., Unit #170<br>Lanham, MD 20706<br>Prince George's County; | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| Empowerment Justice Center Wellness<br>Center LLC<br>c/o Statutory Agent, Capital Crescent<br>Business Associates<br>9103 Woodmore Centre Dr., Unit #170<br>Lanham, MD 20706<br>Prince George's County; | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| Medical Arts Capital Group, LLC<br>c/o Statutory Agent, Demetrich Thrower<br>1506 Broadway St., Suite 100<br>Pearland, TX 77581; | : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| MyVision LLC<br>c/o Statutory Agent, Dr. Allyson Abrams<br>12808 Woodmore North Blvd.<br>Bowie, MD 20720<br>Prince George's County; | : <br> : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |

| | |
|---|---|
| Dr. Allyson Abrams | : |
| 12808 Woodmore North Blvd., | : |
| Bowie, MD 20720 | : |
| Prince George's County; | : |
| | : |
| and | : |
| | : |
| Dr. Diana Williams | : |
| 12808 Woodmore North Blvd., | : |
| Bowie, MD 20720 | : |
| Prince George's County, | : |
| | : |
| Defendants. | : |

# COMPLAINT

Plaintiff Timilon Corporation ("Timilon"), for its Complaint against Defendants Empowerment Justice Center Corporation ("EJC Corporation"), Empowerment Justice Center Wellness Center LLC ("EJC Wellness") (collectively herein, "EJC"), Medical Arts Capital Group, LLC ("Medical Arts"), MyVision LLC ("MyVision"), Dr. Allyson Abrams ("Abrams"), and Bishop Diana Williams ("Williams") (collectively, the "Defendants") alleges as follows:

## PARTIES, JURISDICTION & VENUE

1. Timilon is a Delaware corporation with its headquarters and principal place of business at 24301 Walden Center Drive, Suite 300, Bonita Springs, Florida 34134. Timilon is a citizen of the State of Florida.

2. EJC Corporation is a Maryland corporation with its principal place of business at 12138 Central Avenue, Suite 280, Bowie, Maryland 20721. EJC Corporation is a citizen of the State of Maryland.

3. EJC Wellness is a Maryland limited liability company with its principal place of business at 7050 Chesapeake Road, Suite 104, Hyattsville, Maryland 20784. Upon information and belief, none of the members of EJC Wellness are citizens of the State of Florida.

4. Medical Arts is a Texas limited liability company with its principal place of business at 1506 Broadway Street, Suite 100, Pearland, Texas 77581. Upon information and belief, none of the members of Medical Arts are citizens of the State of Florida.

5. MyVision is a Maryland limited liability company with a principal place of business in Maryland. Upon information and belief, none of the members of MyVision are citizens of the State of Florida.

6. Upon information and belief, Abrams is an individual residing in Prince George's County in Maryland whose last known address is 12808 Woodmore North Boulevard, Bowie, Maryland 20720. Abrams is a citizen of the State of Maryland.

7. Abrams is a pastor at Empowerment Liberation Cathedral, which received four Air Purifiers (defined below) and is located in Lanham, Maryland.

8. Upon information and belief, Williams is an individual residing in Prince George's County in Maryland whose last known address is 12808 Woodmore North Boulevard, Bowie, Maryland 20720. Williams, like Abrams, is a pastor. Williams is a citizen of the State of Maryland.

9. Abrams and Williams are married and also act as business partners in connection with EJC and MyVision.

10. This Court has jurisdiction over this action under 28 U.S.C. §1332, because, upon information and belief, there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

11. This Court has personal jurisdiction over Defendants because several of Defendants reside in this district, each of the Defendants regularly conduct business in Maryland, and the actions of Defendants that give rise to the claims in this lawsuit took place in Maryland.

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because several of Defendants reside in this district and/or a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL BACKGROUND

13. Timilon is focused on the commercialization and development of proprietary and advanced materials for purification of air and the neutralization of toxic and noxious chemicals and odors. In sum, Timilon provides solutions to clean the air we breathe. Timilon owns various patents and is a supplier of various products, including air purifiers.

14. EJC Corporation and EJC Wellness are not for profit, charitable organizations involved in social justice issues, including issues surrounding SARS-CoV-2 COVID-19. Williams and Abrams are in charge of these two entities and run them together without distinction under the title of "EJC."

15. In March of 2022, EJC commenced an indoor air quality initiative project (the "IAQ Initiative Project") to improve indoor air quality and ventilation within 265 faith establishments, day cares and classrooms around the District of Columbia, Maryland, Virginia, and Georgia in response to the spread of COVID-19 infections. The IAQ Initiative Project began in March of 2022 and Timilon was approached by Abrams and Williams and asked to provide goods and services in furtherance of the project given its expertise in air purification. Abrams and Williams, on behalf of EJC, sold the project to Timilon as a way to contribute positively to the community and to instill confidence in the public that it was safe to return to every-day activities.

16. As part of the IAQ Initiative Project, EJC sent grant letters ("Grant Letters") to various faith establishments informing them of EJC's intention to provide the establishments with Timilon's air purifiers (the "Air Purifiers") known as EnviroKlenz Air System Plus to improve

indoor air quality and ventilation within the space. The Grant Letters were signed by Abrams. A true and accurate copy of a sample Grant Letter is attached as **Exhibit A** and incorporated herein by reference.

17. On or around April 5, 2022, as part of the IAQ Initiative Project, EJC Corporation, Medical Arts, and MyVision purchased from Timilon 3,000 Air Purifiers as listed on invoice #11224 (the "Invoice") issued by Timilon. Each Air Purifier unit cost $799, and the total amount due on the Invoice is $2,397,000.00. A true and accurate copy of the Invoice (with bank account information redacted) is attached as **Exhibit B** and incorporated herein by reference.

18. EJC Corporation, Medical Arts, and MyVision agreed to pay for the Air Purifiers.

19. Timilon fulfilled its duties under the Invoice by providing the Air Purifiers to EJC Corporation, Medical Arts, and MyVision, as promised.

20. As explained below, the amount of the Invoice and Timilon's performance under the Invoice have never been contested by Defendants and, to the contrary, all Defendants have repeatedly confirmed (both orally and in writing) that Timilon is entitled to full payment of the Invoice.

21. In fact, Timilon went above and beyond the Invoice's requirements and expended substantial time and resources in excess of $400,000 to develop, oversee, and implement the overall IAQ Initiative Project communications, site assessments, systems positioning, installations, and training plans and processes of Air Purifiers at various faith establishments, day cares and classrooms around the District of Columbia, Maryland, Virginia, and Georgia. Timilon normally charges for these types of services, but given the purpose of the IAQ Initiative Project, Timilon did not charge EJC Corporation, Medical Arts, or MyVision for these additional services.

22. Several of the churches that received Air Purifiers wrote letters to Timilon in order to thank Timilon for installing the Air Purifiers. In those letters, these churches noted how the Air Purifiers improved air quality and allowed their congregations to gather in facilities where the air is being purified.

23. On or around May 19, 2022, Abrams on behalf of EJC Corporation and EJC Wellness, sent a letter to Timilon informing Timilon that the Invoice had been approved for payment by Medical Arts and MyVision. The letter specifically indicated that "donations are being deposited to Empowerment Justice Center" and further explained that the monies would then be "distributed to Timilon" within 7-10 days through three disbursements of payments. The letter further stated that Timilon could contact "Bishop Diana Williams" by her cell phone to discuss payment. A true and accurate copy of the May 19, 2022 letter is attached as **Exhibit C** and incorporated herein by reference.

24. The 7-10 days referenced in Exhibit C passed without Timilon having been paid and, as a result, Timilon continued to demand payment on the Invoice from EJC, Medical Arts, and MyVision.

25. On or around June 10, 2022, and with the Invoice still outstanding and no payment having yet been made, Abrams on behalf of EJC, sent another letter to Timilon titled "Payment Commitment Letter." This letter, among other things, informed Timilon that EJC was the "benefactor of grant funding from the joint venture revenue stream from a Medical Supply" company. Upon information and belief, the letter was referring to Medical Arts.

26. The letter acknowledged the work done by Timilon under the Invoice, stating that Timilon "has placed over 2500 EnviroKlenx machines in over 200 facilities in the District of Columbia, Maryland, Virginia, and Georgia." Once again, the letter stated that EJC had been

granted funds to pay the Invoice. The letter also informed Timilon that Williams was the custodial agent on behalf of the "contracted joint venture." The letter stated that EJC was "very grateful" for Timilon's partnership to "provide clean air." The letter also made specific promises to pay Timilon.

27. A true and accurate copy of the June 10, 2022 letter is attached as **Exhibit D** and incorporated herein by reference.

28. Despite the promise of payment in the June 10, 2022 letter, no payment was made to Timilon on June 16 or June 30.

29. After even further demands for payment by Timilon, Timilon was referred to counsel for Defendants. On or around July 18, 2022, Clifford Barnes ("Barnes"), counsel for EJC, Medical Arts, MyVision, Abrams and/or Williams, sent an email to Timilon's CEO, Bill Sanford ("Sanford"), informing Sanford that Williams would be making payment on the Invoice. A true and accurate copy of the July 18, 2022 email is attached as **Exhibit E** and incorporated herein by reference.

30. Once again, no payment was made as promised in Barnes' July 18 email.

31. On or around July 25, 2022, Barnes sent another email to Sanford providing confirmation of a payment schedule for the Invoice that he represented Williams had committed to fulfill. The email set forth a payment in monthly installments from July through November in various amounts, which Barnes represented that Williams had agreed to and which Barnes stated Medical Arts was aware of. A true and accurate copy of the July 25, 2022 email is attached as **Exhibit F** and incorporated herein by reference.

32. Once again, no payment was received as promised in the July 25, 2022 email.

33. On or around August 1, 2022, Sanford sent an email to Barnes confirming Barnes' agreement, on behalf of his clients, to get Timilon paid "within 90 days." Sanford summarized the repeated failures to pay as follows:

> **Subject:** EJC/Donor Payment Schedule CONFIDENTIAL
> **Date:** Monday, August 1, 2022 at 4:42:00 PM Eastern Daylight Time
> **From:** Bill Sanford
> **To:** Clifford E. Barnes
>
> Cliff,
>
> This is to confirm our conversation of today regarding EJC/Donor(s)/Payor proposed terms for the payment in full of the EJC/Donor/Funder agreed financial obligations of $2,397,000.00 to Timilon Corporation within 90 days. You and I have discussed in depth the multitude of payment schedules and promises that have been made during the past four months by Dr. Williams, her EJC colleagues, and the Donor(s) to fulfill their previously agreed funding commitments for the highly successful IAQ Initiative. None of the promised payments have been made to Timilon. It is important to emphasize that the only agreed payment terms discussed prior to the start of the IAQ Initiative was payment in full to be submitted by wire transfer.

34. Per the request of Barnes, and based on continued promises to pay by Defendants, Sanford's August 1, 2022 email set forth *a new* payment schedule with extended payment terms. Sanford further informed Barnes that if the schedule was not met, Timilon would begin charging interest and delayed payment fees due to the substantial delay in getting paid on the Invoice. A true and accurate copy of the August 1, 2022 email is attached as **Exhibit G** and incorporated herein by reference.

35. Once again, Defendants failed to pay the amounts due and owing to Timilon under the Invoice.

36. The above referenced promises are not exhaustive, and reflect only a handful of the more than a dozen promises to pay made by Abrams and Williams on behalf of EJC and Medical Arts.

37. Sanford contacted Abrams, Williams, Barnes, and others countless times via text message regarding the status of the payment pursuant to the Invoice. In total, Sanford exchanged

more than a hundred text messages with Abrams, Williams, and Barnes between June of 2022 and January of 2023, in which all three *repeatedly* promised payment of the full Invoice amount. Sanford also had various phone calls with these individuals in which each of them promised that Timilon would be paid in full.

38. Specifically, Abrams and Williams each continuously made false statements regarding the delay in payment and further represented that payments would be forthcoming on the Invoice. These text messages and phone calls occurred before, during, and after the timing of Exhibits C-G. The text messages are not attached to this Complaint in their entirety due to their high volume and copies of same are believed to be in Defendants' possession.

39. In one exchange with Williams on June 24, 2022, and after Sanford expressed his frustration with the delays in payment, Williams stated "I have nerve (sic) given my word and had funders not do what they say. Trust I have been raising money for 30 years. I will have this done. I don't want my reputation destroyed…"

40. In another, on October 25, 2022, Williams expressly stated that payment was coming "with in 24 hours.500k." No payment was made. Again, on October 29, 2022, Williams stated "Jacob" (another "donor" or "investor" who was purportedly going to provide funds to EJC to fulfill the invoice) "has processed wires the Banker's sent out will have wire email confirmation code once yours has been processed. I understand they started yesterday and will complete by Monday." Again, no payment was made. Williams blamed issues with the banks and difficulties coordinating wire transfers. This pattern of promised payment followed by vague excuses for the delays continued via text for months.

41. Defendants' attorney, Barnes, likewise made repeated representations to Sanford on behalf of his clients that payment would be made. For example, on July 26, 2022, Barnes stated

that he was "representing Medical Arts Capital Group, which as I understand it is responsible for payment of the 2.3M." Barnes likewise represented the money to pay Timilon was on its way to him personally, in messages sent to Sanford on August 5, 2022. Despite this, no payment was made. As with Abrams and Williams, Barnes' repeatedly expressed to Sanford that payment in full was coming, yet it never came.

42. These repeated promises of payment, and offers of payment schedules (something the Invoice never contemplated), have continued into 2023. Indeed, throughout February and March of 2023, and as recently as April 3, 2023, Defendants promised that payment was forthcoming. And once again, Defendants have failed to pay. At this point, it has become clear that Defendants do not intend to pay the monies owed to Timilon and never did.

43. To date, Defendants have not tendered payment of a single penny on the Invoice to Timilon. As of the filing of this Complaint, the Invoice is now more than a year old.

44. Instead, and based on Defendants' repeated representations that "funding" has been secured based upon the Timilon Invoice, Plaintiff believes and alleges upon information and belief that Defendants have used the Invoice as a method of attracting financial contributions which they have then utilized for other means and to the benefit of EJC, Medical Arts, MyVision, or Abrams and Williams personally.

45. Based upon Defendants *repeated* false representations that payment would be made, it is clear that Defendants never intended to tender payment on the Invoice. Defendants deliberately misled Timilon into believing that the Invoice would be properly paid and then strung Timilon along with false promises of payment in order to delay the filing of this lawsuit. Timilon has spent countless hours attempting to collect on the Invoice.

46. Timilon believed and reasonably relied on those promises, in part because of the position that Abrams and Williams held in their community and in their church. Timilon never imagined that two pastors would engage in a scheme to defraud a company like Timilon, who had bent over backwards to assist in the IAQ Initiative Program. Unfortunately, it is now clear that is exactly what has happened.

### COUNT I – BREACH OF CONTRACT
**(Against all Defendants)**

47. Timilon restates and re-alleges the preceding paragraphs as though fully rewritten herein.

48. The Invoice is a valid and enforceable contract entered into between Timilon, EJC, Medical Arts, and MyVision..

49. Timilon performed all of its obligations under the Invoice, specifically by supplying 3,000 units of the Air Purifiers to EJC, Medical Arts, and MyVision.

50. Pursuant to the Invoice, EJC, Medical Arts, and MyVision were to tender payment in the amount of $2,397,000.00 to Timilon for the Air Purifiers.

51. No payment of the Invoice has been tendered by any of EJC, Medical Arts, MyVision, or any other person or entity.

52. Pursuant to Exhibits C-G and numerous text messages and phone calls by and between Abrams and Sanford, and Williams and Sanford, Abrams and Williams personally promised to tender payment in the amount of $2,397,000.00 to Timilon for the Air Purifiers pursuant to the Invoice.

53. Despite repeated demands by Timilon and repeated promises by Defendants, Defendants have failed to tender payment in the amount of $2,397,000.00 to Timilon for the Air Purifiers pursuant to the Invoice.

54. EJC Corporation, EJC Wellness, Medical Arts and/or MyVision materially breached the terms of the Invoice by failing to tender payment in the amount of $2,397,000.00 to Timilon for the Air Purifiers pursuant to the Invoice.

55. Upon information and belief, EJC and MyVision are merely corporate façades and are the alter-egos of Abrams and Williams, who fraudulently induced Timilon into entering into and performing under the Invoice, such that Abrams and Williams are personally liable for EJC and MyVision's breach of the Invoice.

56. Defendants' breach of the Invoice is without excuse or justification.

57. As a direct and proximate result of Defendants' material breach of the Invoice, Timilon, Defendants are liable to Timilon for breach of contract and damages=in an amount at least equal to $2,397,000. plus applicable interest, late fees, and collection costs.

## COUNT II - PROMISSORY ESTOPPEL
### (Against Abrams and Williams)

58. Timilon restates and re-alleges the preceding paragraphs as though fully rewritten herein.

59. Abrams and Williams induced Timilon into entering the Invoice with the clear and definite promise that Timilon would be paid for the Air Purifiers in the amounts listed on the Invoices, and their promises did result in Timilon entering into the Invoice and supplying the Air Purifiers.

60. Timilon has not been paid on the Invoice despite these clear and definite promises of payment, which have continued well after the issuance of the Invoice. This detriment can only be avoided if Timilon is paid as required under the Invoice.

61. Thus, and as a direct and proximate result of Defendants' promises, Timilon has been damaged in an amount at least equal to $2,397,000.00 plus applicable interest, late fees, and collection costs.

### **COUNT III – FRAUD**
### **(Against all Defendants)**

62. Timilon restates and re-alleges the preceding paragraphs as though fully rewritten herein.

63. Defendants sought out Timilon to supply the Air Purifiers.

64. Timilon supplied the Air Purifiers to Defendants pursuant to the Invoice, and installed them at a number of faith establishments, day cares and classrooms around the District of Columbia, Maryland, Virginia and Georgia.

65. It did so because it was promised payment for its provision of the Air Purifiers by Abrams and Williams, on behalf of EJC, Medical Arts, and MyVision. Abrams and Williams represented themselves as being pastors and persons of high integrity.

66. Instead, and upon information and belief, Defendants never intended to pay Timilon for the Air Purifiers and instead intended to string Timilon along, hoping Timilon would not press for payment. Upon information and belief, Defendants knew at the time of entering into the Invoice that they had no intention of ever paying the Invoice.

67. Upon information and belief, Defendants conspired to defraud Timilon by making numerous misrepresentations that payment(s) on the Invoice would be forthcoming for nearly a year, each time concocting new reasons why payment was delayed.

68. Indeed, in certain instances Defendants, through Abrams and Williams, suggested that payment had been received from donors or investors to pay the Timilon Invoice, yet Timilon

never received any of that money. Upon information and belief, Defendants used the Invoice to fundraise so that they could take the monies for other purposes.

69. Timilon reasonably relied on the representations of Defendants to its detriment.

70. As a direct and proximate result of Defendants' fraud, Timilon has been damaged in the amount at least equal to $2,397,000.00 plus applicable interest.

## COUNT IV – UNJUST ENRICHMENT
**(Against all Defendants)**

71. Timilon restates and re-alleges the preceding paragraphs as though fully rewritten herein.

72. Timilon provided the Air Purifiers according to the terms of the Invoice to various establishments, as alleged in this complaint, at the direction of Defendants.

73. Defendants received the benefit of these Air Purifiers by way of their increased standing in the community and by way of other reputational benefits.

74. In addition, Timilon went above and beyond what it was required to do and expended substantial time and resources in excess of $400,000 to develop, oversee, and implement the overall IAQ Initiative Program communications, site assessments, systems positioning, installations, and training plans and processes of the Air Purifiers at various faith establishments, day cares and classrooms around the District of Columbia, Maryland, Virginia, and Georgia. Timilon normally charges for these types of services, but given the purpose of the IAQ Initiative Program, Timilon did not charge EJC Corporation, Medical Arts, or MyVision for these additional services. Defendants, however, have retained the benefit of all of these additional services.

75. Defendants have acknowledged the beneficial impact of Timilon's provision of the Air Purifiers and additional work beyond the requirements of the Invoice.

76. Further, Defendants have fundraised monies from donors and investors in order to pay the Invoice. Despite this, no such monies have been paid to Timilon.

77. Defendants have failed to pay Timilon for the Air Purifiers. It would thus be unjust for Defendants to enjoy the benefits of the Air Purifiers without payment to Timilon for same.

78. As set forth above, Defendants have been unjustly enriched in an amount of at least $2,397,000.00 by virtue of their retaining the benefits of the Air Purifiers without paying Timilon for same.

## COUNT V – PIERICING THE CORPORATE VEIL
(Against Abrams and Williams)

79. Timilon restates and re-alleges the preceding paragraphs as though fully rewritten herein.

80. Upon information and belief, Abrams and Williams have operated EJC and MyVision for fraudulent or unlawful purposes and/or as Abrams's and Williams's alter egos because, without limitation: (1) Abrams and Williams made numerous misrepresentations on behalf of EJC and MyVision to Timilon regarding tendering payment to Timilon pursuant to the Invoice, (2) said misrepresentations were made in such a manner as to commit fraud or other unlawful acts against Timilon, by failing and refusing to make payment in accordance with the Invoice, and (3) EJC and MyVision's existence is merely a façade for Abrams's and Williams's individual dealings.

81. Timilon has been injured by Abrams and Williams control over EJC and MyVision and each of their use of the companies to defraud Timilon.

82. The Court may pierce the corporate veil of EJC Corporation, EJC Wellness, and MyVision, and hold Abrams and Williams personally liable for EJC and MyVision's business

dealings because there is an element of injustice or fundamental unfairness stemming from EJC and MyVision being merely an alter ego or instrumentality of Abrams and Williams.

83. Because EJC and MyVision are merely an alter ego or instrumentality of Abrams and Williams, the Court should pierce the corporate veil and hold Abrams and Williams personally liable for the damages suffered by Timilon and as alleged herein in Count I of this Complaint.

**WHEREFORE**, Plaintiff prays that this Court enter judgments in its favor and against Defendants as follows:

1. With respect to Count I of the Complaint, against all Defendants, jointly and severally, in the amount at least equal to $2,397,000.00, plus applicable interest, late fees, and collection costs;

2. With respect to Count II of the Complaint, against Abrams and Williams, jointly and severally, in the amount at least equal to $2,397,000.00, plus interest from the date of invoicing;

3. With respect to Count III of the Complaint, against all Defendants, jointly and severally, in an amount at least equal to $2,397,000.00, plus applicable interest, late fees, and collection costs, as well as attorneys' fees and punitive damages;

4. With respect to Count IV of the Complaint, against all Defendants, jointly and severally, in an amount at least equal to $2,397,000.00;

5. With respect to Count V of the Complaint, for an Order piercing the corporate veil of EJC Corporation, EJC Wellness, and MyVision and finding Abrams and Williams personally liable for the damages outlined above; and

6. For damages set forth herein, together with all costs, expenses, pre-judgment and post-judgment interest, attorneys' fees, and any and all further relief favorable to Plaintiff that this Court deems just and equitable.

Dated: April 27, 2023            Respectfully submitted,

*/s/ Thomas Southard*
Thomas Southard(#16861)
TAFT STETTINIUS & HOLLISTER LLP
200 Massachusetts Avenue, NW, Suite 500
Washington, DC 20001-5875
Phone:  (202) 664-1537
Facsimile:  (202) 664-1586
Email:  tsouthard@taftlaw.com

*Counsel for Plaintiff Timilon Corporation*