IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TIMILON CORPORATION

    v.                               Civil Action No. DKC 23-1134

EMPOWERMENT JUSTICE CENTER
CORPORATION, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this contract breach case is the motion filed by Plaintiff Timilon Corporation ("Timilon") for alternative service of process and extension of time to serve process on Defendants Allyson Abrams ("Abrams") and Diana Williams ("Williams"). (ECF No. 12). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be granted.

**I. Background**

Timilon has been unsuccessful in its numerous attempts to effect service of process on Abrams and Williams. On April 27, 2023, Timilon commenced this breach of contract action against Empowerment Justice Center Corporation, Empowerment Justice Center Wellness Center LLC, Medical Arts Capital Group, LLC, MyVision LLC, Dr. Allyson Abrams, and Dr. Diana Williams. (ECF No. 12, at 3). Timilon purports to have successfully effected service of

process on all defendants except Abrams and Williams, who are a married couple. (*Id.* at 2; ECF No. 12-2, at 41). On May 2, 2023, counsel for Timilon emailed a copy of the complaint to Mr. Clifford Barnes, counsel for MyVision LLC, inquiring if "his clients [were] willing to waive service." (ECF No. 12, at 4, 5; ECF No. 12-2, at 36). Mr. Barnes responded that "based upon the complaint, [he] may be considered a fact witness in the case; as a result [his] firm is reviewing whether [he] can serve as counsel." (ECF No. 12-2, at 38). "Timilon then made numerous attempts to serve Abrams and Williams at the addresses" that it and its private process server located for them, but all were "[in]valid or have otherwise failed to achieve service." (ECF No. 12, at 5, 7).

Despite its unsuccessful attempts at service, Timilon contends that Abrams and Williams have notice of the suit. First, Timilon's counsel communicated "extensive[ly]" with Mr. Barnes "regarding a payment plan that would resolve this dispute and result in payment to Timilon." (*Id.* at 4). Mr. Barnes represents MyVision LLC, an entity with whom Abrams and Williams act as business partners, and for which Abrams serves as registered agent. (*Id.* at 3-4). Timilon argues that "it is reasonable to assume that Mr. Barnes has communicated with, and is still communicating with, Abrams" and that Mr. Barnes's emails suggest he "is communicating with Williams, or at a minimum, has a way to apprise Williams of the claims against her." (*Id.* at 4). And second,

2

"Timilon's private process server — Vincent Piazza — spoke with Abrams by phone about his attempts to serve her and her wife with a summons and a complaint and Abrams originally agreed to meet, but then stopped returning calls and texts so as to avoid service." (*Id.* at 5).

Contending that its "diligent" attempts to effect service constitute good cause, Timilon requests both (1) an extension of time for it to effect service on Abrams and Williams and (2) permission to serve both Defendants through Mr. Barnes, or in the alternative, by publication or some other alternative means. (*Id.* at 7).

**II. Analysis**

**A. Timilon's Motion to Extend Time to Effect Service**

Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If a defendant is not served within 90 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).  In light of the Supreme Court's dicta explaining that under the 1993 amendments to the Rules, "courts have been accorded discretion to enlarge the [service of process] period '*even if there is no good cause shown*,'" *Henderson v. United States*, 517 U.S. 654, 662-63 (1996) (emphasis added) (citing

3

Fed.R.Civ.P. 4(m) advisory committee's note to 1993 amendment), courts in this Circuit have increasingly sanctioned extending time for parties to effect service even without cause. *See, e.g., Gelin v. Shuman,* 35 F.4th 212, 219 (4th Cir. 2022) ("[W]hile a district court *must* extend the time for service when a plaintiff shows good cause, such a showing is not *necessary* for the court to grant an extension *in its discretion*."); *Whetstone v. Mayor & City Council of Baltimore City*, No. ELH-18-738, 2019 WL 1200555, at *7 (D.Md. Mar. 13, 2019) ("[I]t is within the Court's discretion to extend plaintiff's time to serve under Rule 4(m).").

"Good cause" generally requires the Plaintiff to demonstrate that she exercised "reasonable diligence in trying to effect service." *Jones v. Sears, Roebuck & Co.*, No. DKC-15-3092, 2016 WL 1696557, at *2 (D.Md. Apr. 28, 2016). Circumstances amounting to good cause may be "where a defendant is evading service; where the plaintiff experienced difficulty in obtaining a defendant's proper address; where court staff misdirected a *pro se* plaintiff as to the appropriate procedure for service; or where plaintiff was unaware of the defendant in service until after the deadline expired." *Id.* (citing *Hoffman v. Balt. Police Dep't*, 379 F.Supp.2d 778, 786 (D.Md. 2005)). "'[I]nadvertence or neglect of counsel' . . . will not suffice to satisfy the standard of 'good cause.'" *Combs v. Shapiro & Burson LLP*, No. GJH-15-846, 2016 WL

4

1064459, at *4 (D.Md. Mar. 14, 2016) (quoting *Braithwaite v. Johns Hopkins Hosp.*, 160 F.R.D. 75, 77 (D.Md. 1995)).

Timilon contends that it has established good cause to extend the deadline because it has been "diligent in attempting to effect service" and because after "repeated attempts," neither it nor its process server, Mr. Piazza, have been able to "obtain a valid address" at which to effect service. (ECF No. 12, at 7). Timilon offers sworn affidavits from Mr. Piazza detailing his nine attempts at seven different addresses to effect service on Abrams and Williams. (ECF Nos. 12-3; 12-4). During one of the attempts, Mr. Piazza spoke to Abrams on the phone. She agreed to meet him to accept service but was unreachable the next day. (*Id.*). Therefore, it is almost certain that Abrams, and likely Williams as well, have notice of the suit and are evading service. Timilon made all nine attempts to serve process and filed the motion to extend time before the deadline. Thus, Timilon has shown that it undertook reasonable and diligent efforts to effect service. Because good cause exists, this court must extend time to serve summons on Abrams and Williams. Accordingly, the extension of time to serve summons will be granted.

**B. Timilon's Motion for Alternate Service**

Rule 4(e)(1) provides, in pertinent part, that an individual defendant may be served pursuant to "state law . . . in the state

5

where the district court is located." Under Maryland law, service can be effected

> (1) by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it; (2) if the person to be served is an individual, by leaving a copy of the summons, complaint, and all other papers filed with it at the individual's dwelling house or usual place of abode with a resident of suitable age and discretion; or (3) by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery--show to whom, date, address of delivery."

Md. Rules 2-121(a). Maryland Rule 2-121(b) applies when defendants are evading service, and provides that:

> When proof is made by affidavit that a defendant has acted to evade service, the court may order that service be made by mailing a copy of the summons, complaint, and all other papers filed with it to the defendant at the defendant's last known residence and delivering a copy of each to a person of suitable age and discretion at the place of business of the defendant.

Md. Rules 2-121(b). Maryland Rule 2-121(c), in turn, provides that:

> When proof is made by affidavit that good faith efforts to serve the defendant pursuant to section (a) of this Rule have not succeeded and that service pursuant to section (b) of this Rule is inapplicable or impracticable, the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice.

6

Md. Rules 2-121(c). To pass constitutional muster, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n*, 94 F.3d 914, 920-21 (4th Cir. 1996). "When available, the combination of the two service options of mailing to the last known address and posting service on the door of that address, sometimes referred to as 'nail and mail,' continuously has been found to provide the constitutionally required level of notice in a situation demanding alternative service." *Fid. Nat'l Title Ins. Co. v. M&R Title, Inc.*, No. PWG-12-148, 2013 WL 12423808, at *2 (D.Md. Feb. 15, 2013).

Timilon alleges that it "has not been able to serve Abrams and Williams pursuant to Md. Rule 2-121(a)." (ECF No. 12, at 8). As addressed above, Timilon has provided affidavits from Mr. Piazza showing nine unsuccessful service attempts on Abrams and Williams. (ECF Nos. 12-3; 12-4). Consequently, the court agrees that service under Md. Rule 2-121(a) has failed.

Md. Rule 2-121(b) then requires plaintiffs to provide an affidavit proving that "defendant has acted to evade service." Timilon satisfied this condition by filing affidavits from Mr. Piazza attesting to his nine attempts to effect service. (ECF Nos. 12-3; 12-4). In particular, the phone call in which Abrams

agreed to accept service the next day and then failed to respond to Mr. Piazza's phone calls and texts evinces evasion of service. (*Id.*). Timilon argues, however, that "service pursuant to Md. Rule 2-121(b) is inapplicable and impracticable because Timilon is aware that addresses it located for Abrams and Williams are not valid and because, despite Timilon's efforts and those of its private process server, it has not be[en] able to locate any other addresses that pose any possibility of successful service." (ECF No. 12, at 8). The court agrees that effecting "nail and mail" service to Abrams' and Williams' last known address will likely not provide notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

Thus, Md. Rule 2-121(c) applies. Timilon has provided affidavits proving that "good faith efforts to serve" Abrams and Williams "pursuant to section (a) of this Rule have not succeeded" and has shown that "service pursuant to section (b) of this Rule is inapplicable or impracticable." Md. Rule 2-121(c). As a result, "the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice." *Id.* Pursuant to Md. Rule 2-121(c), Timilon proposes to serve Abrams and Williams through attorney Mr.

Barnes, or in the alternative, by publication or some other alternative means.  (ECF No. 12, at 8-9).

Timilon argues "there is no doubt that service on Mr. Barnes is reasonably calculated to provide Williams and Abrams with notice and that it will provide Williams and Abrams with a reasonable opportunity to respond with any objections." (*Id.* at 9).  First, Timilon notes that Mr. Barnes "indicated that he was looking into who at his firm would be assigned to this matter and what client his firm will be representing," which Timilon argues "will necessarily involve a discussion with Williams and Abrams about this matter and whether Mr. Barnes' firm will be representing them." (*Id.*).  Second, Timilon contends that "it is clear based on Mr. Barnes' repeated communications with Williams, and his representation of MyVision (whose registered agent is Abrams) that Mr. Barnes communicates with Williams and Abrams." (*Id.* (internal citation omitted)).

Timilon correctly asserts that a court in this district "has permitted a plaintiff to serve counsel when a plaintiff demonstrates that service through counsel is 'reasonably calculated to provide [a defendant] with notice of th[e] case and gives [that defendant] a reasonable opportunity to respond with [their] objections.'" (*Id.* (citing *Hecker v. Garner*, No. 1:22-cv-02152-JMC, 2023 WL 2023220, at *4 (D.Md. Feb. 15, 2023)).  This case is distinguishable from *Hecker*, though, because although Mr.

9

Barnes represented, and may continue to represent, a *co-defendant* in this case (MyVision LLC), it is unclear whether Mr. Barnes or anyone at his firm will represent Abrams and Williams.  In *Hecker*, on the other hand, the attorney to whom the court permitted alternative service represented the defendants in the case at hand at the beginning of the suit.  *See Hecker*, 2023 WL 2023220, at *4.

Although the facts in this case are not perfectly analogous to those in *Hecker*, similar reasoning applies here.  The *Hecker* court found persuasive the plaintiff's detailed filings indicating the attorney's former involvement in the case.  *Id.*  First, that attorney "replied to the Demand Letter on behalf of" the defendant "prior to commencement of [the] case."  *Id.*  Second, when the plaintiff asked the attorney "whether he had authority to accept service on behalf of" the defendant, the attorney "responded that he would have to ask his 'client.'"  *Id.*  Third, the attorney "is currently representing" the defendant "in other litigation matters against the defendant's co-defendant."  *Id.*  Consequently, the court concluded that the defendant "no doubt . . . already has actual notice of the litigation pending" and even if not, service on the attorney "is reasonably calculated to provide" the defendant "with notice of this case and gives him a reasonable opportunity to respond with his objections."  *Id.*

Here, similarly, Timilon has provided detailed filings outlining its various attempts at service, as well as Mr. Barnes's

10

relation to Abrams and Williams. Although Mr. Barnes does not appear to ever have been Abrams' or Williams' counsel, he did communicate repeatedly with Williams about this case. (ECF No. 12, at 4; ECF No. 12-2, at 7, 12, 15) ("Based upon the discussions with Dr. Williams, I want to propose a payment schedule."; "I will talk with Dr. Williams and let you know her response."; "I just met with Dr. Williams."). Mr. Barnes also told Timilon's counsel that he "will inquire as to the client we represent," implying a possibility that Mr. Barnes' firm may take on Abrams and Williams as clients in this matter. (ECF No. 12-2, at 43). Although Mr. Barnes' contact with Williams is slightly less extensive than that of the attorney in *Hecker*, it is still considerable. Further, Mr. Barnes represented, or continues to represent, Abrams' and Williams' co-defendant in this matter, MyVision LLC, for whom Abrams serves as registered agent. (ECF No. 12, at 9). Mr. Barnes is sufficiently intertwined with this matter, and with Abrams and Williams, such that serving him would provide notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

**III. Conclusion**

Based on the evidence presented in the affidavits of Mr. Piazza, it is clear to the court that Abrams and Williams have

actual notice of the litigation currently pending before this court. Even assuming, however, that Abrams, Williams, or both are unaware of the current action pending against them, the court concludes that serving Mr. Barnes with the relevant documents is reasonably calculated to provide Abrams and Williams with notice of this case and give them a reasonable opportunity to respond with their objections.

                                                          /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge