IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TIMILON CORPORATION | : | |
| | : | |
| v. | : | Civil Action No. DKC 23-1134 |
| | : | |
| EMPOWERMENT JUSTICE CENTER CORPORATION, et al. | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this contract breach case are (1) the motion for entry of default and default judgment filed by Plaintiff Timilon Corporation ("Timilon"), (ECF No. 32); (2) the second amended motion to vacate the entry of default filed by Defendants Empowerment Justice Center Corporation ("EJC"), Empowerment Justice Center Wellness Center LLC ("EJCW"),[1] MyVision LLC ("MyVision"), Dr. Allyson Abrams ("Dr. Abrams"), and Dr. Diana Williams ("Dr. Williams"), (ECF No. 47); (3) the third amended motion to vacate the entry of default filed by Defendant Medical Arts Capital Group, LLC ("Medical Arts"), (ECF No. 54); and (4) Timilon's motion to strike and opposition to Medical Arts' third amended motion to vacate entry of default, (ECF No. 55). The issues have been briefed, and the court now rules, no hearing

---

[1] In their motion, Defendants refer to this party as "Empowerment Justice Wellness Center, LLC." The name in the complaint, however, is "Empowerment Justice Center Wellness Center LLC."

being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to strike will be denied, both motions to vacate entry of default will be denied, and the motion for entry of default and default judgment will be granted in part and denied in part.

## I.   Background

The following facts alleged in the complaint are taken as true.  Dr. Williams and Dr. Abrams are pastors and a married couple who lead EJC and EJCW, nonprofit organizations involved in social justice issues.  (ECF No. 1 ¶¶ 7-9, 14).  In March of 2022, EJC commenced an indoor air quality initiative project (the "Initiative") to improve indoor air quality and ventilation within 265 faith establishments, day cares, and classrooms around the District of Columbia, Maryland, Virginia, and Georgia in response to the spread of COVID-19 infections.  (*Id.* ¶ 15).  As part of the Initiative, Dr. Abrams and Dr. Williams approached Timilon, which focuses on the commercialization and development of proprietary and advanced materials for purification of air and the neutralization of toxic and noxious chemicals and odors, to request that it provide goods and services in furtherance of the project. (*Id.* ¶¶ 13, 15).  EJC, Medical Arts, and MyVision purchased 3,000 air purifiers from Timilon for $799 per unit, with a total amount due of $2,397,000, as memorialized in an invoice.  (*Id.* ¶ 17). EJC, Medical Arts, and MyVision agreed to pay for the air

2

purifiers.  (*Id.* ¶ 18).  Timilon provided the air purifiers, and spent in excess of $400,000 to develop, oversee, and implement the Initiative communications, site assessments, systems positioning, installations, and training plans and processes.  (*Id.* ¶ 19).

On or around May 19, 2022, Dr. Abrams, on behalf of EJC and EJCW, sent a letter to Timilon stating that the invoice had been approved for payment by Medical Arts and MyVision.  (*Id.* ¶ 23). The letter specifically provided that "donations are being deposited to Empowerment Justice Center" and explained that the monies would then be "distributed to Timilon" within 7-10 days through three disbursements of payments.  (*Id.*).  The letter also stated that Timilon could contact "Bishop Diana Williams" by her cell phone to discuss payment.  (*Id.*).  No payment was made within 10 days.  (*Id.* ¶ 24).

On or around June 10, 2022, Dr. Abrams, on behalf of EJC, sent another letter to Timilon titled "Payment Commitment Letter." (*Id.* ¶ 25).  This letter, among other things, informed Timilon that EJC was the "benefactor of grant funding from the joint venture revenue stream from a Medical Supply" company, which Timilon alleges upon information and belief referred to Medical Arts.  (*Id.*).  The letter acknowledged that Timilon "has placed over 2500 EnviroKlenx machines in over 200 facilities in the District of Columbia, Maryland, Virginia, and Georgia[]" and stated that EJC had been granted funds to pay the invoice.  (*Id.*

3

¶ 26).  It also stated that Dr. Williams was the custodial agent on behalf of the "contracted joint venture" and promised to pay Timilon on June 15, 2022 and June 30, 2022.  (*Id.*).  No payment was made by June 30.  (*Id.* ¶ 18).

On or around July 18, 2022, EJC's counsel, Clifford Barnes ("Mr. Barnes"), emailed Timilon's CEO, Bill Sanford ("Mr. Sanford"), stating that Dr. Williams would pay the invoice.  (*Id.* ¶ 29).  On or around July 25, 2022, Mr. Barnes sent another email to Mr. Sanford providing confirmation of a payment schedule for the invoice.  (*Id.* ¶ 31).  The email set forth a payment schedule in monthly installments from July through November in various amounts.  (*Id.*).  Mr. Barnes stated that Dr. Williams had agreed to, and Medical Arts was aware of, the payment schedule.  (*Id.*).  No payment was received as promised in the email.  (*Id.* ¶ 32).

On or around August 1, 2022, Mr. Sanford sent an email to Mr. Barnes confirming Mr. Barnes's agreement, on behalf of his clients, to pay Timilon within 90 days.  (*Id.* ¶ 33).  Per Mr. Barnes's request, Mr. Sanford's August 1, 2022 email set forth a new payment schedule with extended payment terms.  (*Id.* ¶ 34).  Mr. Sanford further informed Mr. Barnes that if the schedule was not met, Timilon would begin charging interest and delayed payment fees.  (*Id.*).

In various phone calls and text messages, Dr. Abrams, Dr. Williams, and Mr. Barnes promised payment of the full invoice

amount.  (*Id.* ¶ 37).  Despite their promises, no payment was ever made.  (*Id.* ¶¶ 37-43).  Timilon alleges upon information and belief that Defendants have used the invoice as a method of attracting financial contributions which they then used for "means" other than paying the invoice, and that Defendants never intended to pay for the air purifiers.  (*Id.* ¶¶ 44, 45).

Timilon filed the complaint on April 28, 2023.  (ECF No. 1). It brings claims for breach of contract, fraud, and unjust enrichment against all Defendants, and promissory estoppel and piercing the corporate veil against Dr. Abrams and Dr. Williams. (*Id.* ¶¶ 47-83).  On July 14, 2023, Timilon filed proof of service with affidavits stating that its process servers served EJC, EJCW, MyVision, and Medical Arts.  (ECF No. 10).  On July 27, 2023, Timilon filed a motion for alternative service of process and extension of time to serve process on Dr. Abrams and Dr. Williams. (ECF No. 12).  On September 1, 2023, the court granted Timilon's motion, allowing service by first-class mail and email to Mr. Barnes.  (ECF Nos. 13; 14).  On September 26, 2023, Timilon submitted notice to the court that Mr. Barnes was served via first-class mail and email and that he acknowledged receipt.  (ECF Nos. 15; 19).

On November 3, 2023, Timilon filed motions for clerk's entry of default against each Defendant, (ECF Nos. 25; 26; 28; 29; 30; 31), which the court granted on February 2, 2024, (ECF No. 33).

Also on February 2, 2024, the clerk mailed a notice of default to each Defendant, informing them that they had 30 days by which to file a motion to vacate the entry of default.  (ECF Nos. 34; 35; 38; 39; 40).  The addresses were provided by Plaintiff's counsel.  (ECF Nos. 25; 26; 28; 29; 30; 31).  The notices to Dr. Abrams, Dr. Williams, and MyVision were returned as undeliverable.  (ECF Nos. 41-44).

On January 30, 2024, Timilon filed a motion for entry of default and default judgment against all Defendants.[2]  (ECF No. 32).  Defendants have not filed an opposition.

On March 3, 2024, EJC filed a motion to vacate entry of default.  (ECF No. 45).  On March 7, 2024, EJC, EJCW, and MyVision filed an amended motion to vacate entry of default.  (ECF No. 46).  That same day, EJC, EJCW, MyVision, Dr. Abrams, and Dr. Williams filed a second amended motion to vacate entry of default.  (ECF No. 47).  On March 18, 2024, Timilon filed a notice stating that because the original and first amended motions were filed by some but not all of the Defendants, it intended to oppose Defendants' second amended motion to vacate entry of default.  (ECF No. 49).  On March 21, 2024, Timilon filed an opposition to Defendants'

---

[2] The court granted Timilon's requests for entry of default, (ECF Nos. 25; 26; 28; 29; 30; 31), on February 2, 2024, (ECF No. 33), after Timilon filed its motion for entry of default and default judgment, (ECF No. 32).  Because default has been entered, Timilon's motion for entry of default and default judgment will be construed solely as a motion for default judgment.

second amended motion to vacate entry of default, as well as affidavits of service for Dr. Abrams and Dr. Williams. (ECF Nos. 50; 51; 52). No reply to Timilon's opposition has been filed.

On June 7, 2024, Timilon filed a request to proceed with entering default judgment against Medical Arts, which had not entered an appearance in the case, responded to the clerk's entry of default against it, or opposed Timilon's motion for default judgment. (ECF No. 53). On June 10, 2024, Medical Arts filed a third amended motion to vacate entry of default. (ECF No. 54). On June 24, 2024, Timilon filed a motion to strike and opposition to Medical Arts' third amended motion to vacate the entry of default.[3] (ECF No. 55).

---

[3] The motion to strike, which fails to cite any rule or other authority apart from one case in which the court struck an untimely reply, will be denied. (ECF No. 55, at 7-8) (citing *Sigmon v. Berryhill*, No. 5:17-cv-120-RJC-DSC, 2018 WL 3738227, at *6 (W.D.N.C. Aug. 7, 2018)). Timilon insists that Medical Arts' motion is really a reply masquerading as a "third amended motion," which should be struck for untimeliness. (*Id.* at 8). Courts often address a motion to strike alongside a motion for extension of time, and have construed an opposition to a motion to strike as a motion for extension of time. *See, e.g.*, *Hinson v. Maryland Transit Admin. (MTA) Rail*, No. 16-cv-0792-DKC, 2017 WL 6055447 (D.Md. Dec. 6, 2017) (analyzing motion to strike and motion to enlarge time together); *Plantan v. Smith*, No. 3:22-cv-407-MHL, 2024 WL 1260572, at *4-5 (E.D.Va. Mar. 25, 2024) (construing an opposition to a motion to strike as a motion for extension of time). Here, Defendants have not filed an opposition to Timilon's motion to strike. Because timeliness is an element in the analysis of whether to vacate entry of default, however, the court will address the reason for Medical Arts' delay there.

## II.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Lipenga v. Kambalame*, 219 F.Supp.3d 517, 524-25 (D.Md. 2016); *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002).  The Fourth Circuit has a "'strong policy that cases be decided on their merits,'" *Kronberg v. LaRouche*, 461 F.App'x 222, 225 (4th Cir. 2012) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)), but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party, *see Dominion Fin. Servs., LLC v. Pavlovsky*, 673 F.Supp.3d 727, 740 (D.Md. 2023) (quoting *Grim v. Balt. Police Dep't*, No. 18-cv-3864-ELH, 2019 WL 5865561, at *28 (D.Md. Nov. 8, 2019)).

"Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations

as to damages are not." *Trs. of Nat'l Elec. Benefit Fund v. Eckardt Elec. Co.*, No. 23-cv-1459-DKC, 2024 WL 473805, at *2 (D.Md. Feb. 7, 2024); *see also S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 422 (D.Md. 2005). Conclusions of law are also not deemed admitted, and therefore "[t]he court must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought[.]" *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

Before entering default judgment, "[t]he court first determines whether the unchallenged factual allegations constitute a legitimate cause of action, and, if liability is established, the court then makes an independent determination of damages." *Trs. of Nat'l Elec. Benefit Fund*, 2024 WL 473805, at *2 (citing Fed.R.Civ.P. 55(a)); *see also J&J Sports Prods., Inc. v. Torres*, No. 18-cv-1001-GJH, 2019 WL 1384090, at *2 (D.Md. Mar. 27, 2019) (citing *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010)).

"While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on 'detailed affidavits or documentary evidence to determine the appropriate sum.'" *Trs. of Nat'l Elec. Benefit Fund*, 2024 WL 473805, at *2 (quoting *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.Md. 2001)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. 09-cv-3174-WDQ, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default

judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

## III. Analysis

### A. Motions to Vacate Entry of Default

The sole basis argued in the second amended motion to vacate entry of default filed by EJC, EJCW, MyVision, Dr. Abrams, and Dr. Williams is that Dr. Abrams and Dr. Williams "were not served the Complaint and Summons in this matter and an Affidavit of Service was never filed[.]"  (ECF No. 47, at 1).  In the third amended motion, Medical Arts requests that the court treat it the same as the Defendants who filed the second amended motion because it "should have been included" in the second amended motion "but was inadvertently omitted . . . due to a clerical oversight[.]"  (ECF No. 54, at 1).  It argues that

> the default entered against it should also be vacated for the same reasons articulated in the other Defendants' motion - i.e., Medical Arts has meritorious defenses to assert, its failure to timely respond was not willful, Plaintiff will not suffer prejudice, and Medical Arts promptly seeks to vacate the default upon learning of the oversight in the prior motion.

(ECF No. 54, at 1).  Although Medical Arts refers to "reasons articulated in the other Defendants' motion[,]" none of the other motions to vacate entry of default—original, first amended, or second amended—articulate any "reasons" apart from stating that Defendants were not properly served and an affidavit of service

10

was not filed.  (*See* ECF No. 45 (EJC was "never properly served the Complaint and Summons in this matter and an Affidavit of Service was never filed"); ECF No. 46 (EJC, EJCW, and MyVision "were never properly served the Complaint and Summons in this matter and an Affidavit of Service was never filed"); ECF No. 47 (Dr. Abrams and Dr. Williams "were not served the Complaint and Summons in this matter and an Affidavit of Service was never filed")).

### 1. Service of Process

The court will not set aside entry of default for lack of service.  Neither the second nor third amended motion includes an affidavit, declaration, or any facts in support of the statement that Defendants have not been served.  (ECF Nos. 47; 54).  Indeed, the only exhibits attached are screenshots of the docket intended to show that no affidavit of service had been filed.  (ECF No. 47-1; 47-2).  "A party's own statement, without significant corroboration, is insufficient to overcome the return of service." *Choice Hotels Int'l, Inc. v. Stillwater Joint Venture, LLC*, No. 20-cv-2162-DKC, 2021 WL 5494535, at *2 (D.Md. Nov. 23, 2021). Defendants do not contest the court's ruling that Timilon could serve Dr. Abrams and Dr. Williams via first-class mail and email to Mr. Barnes, or that Dr. Abrams and Dr. Williams were indeed served via mail and email to Mr. Barnes.  (ECF Nos. 13; 14; 33). Nor do they contest the validity of the affidavits of service in

which Timilon's process servers swore under oath that they served EJC, EJCW, Medical Arts, and MyVision. (ECF No. 10). That Timilon had not filed affidavits of service on Dr. Abrams and Dr. Williams by the time Defendants filed their motions to vacate entry of default is unavailing. Timilon filed notices on September 26, 2023 that it served Mr. Barnes via first-class mail and email on September 5, 2023, (ECF No. 15; 19), and it eventually did file the affidavits of service on Dr. Abrams and Dr. Williams on March 21, 2024, (ECF Nos. 51; 51); *see also Bailey v. Maryland Dep't of Hum. Servs.*, No. 21-cv-1629-ELH, 2021 WL 5770278, at *3 (D.Md. Dec. 6, 2021) (first quoting Fed.R.Civ.P. 4(l)(3); then quoting *Miller v. Balt. City Bd. of Sch. Comm'rs*, 833 F.Supp.2d 513, 516 (D.Md. 2011)) (explaining that although the plaintiff did not file a server's affidavit, Rule 4(l)(3) provides that "[f]ailure to prove service does not affect the validity of service[]" and that "[w]hen service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally[]").

### 2. Default Motions

Pursuant to Fed.R.Civ.P. 55(c), "[t]he court may set aside an entry of default for good cause[.]" When deciding whether to vacate an entry of default, courts consider "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory

action, and the availability of sanctions less drastic." *Payne ex rel. Est. of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006). Motions to vacate entry of default are "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." *Id.* (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)).

### a. Meritorious Defense

EJC, EJCW, MyVision, Dr. Abrams, and Dr. Williams do not assert that they have a meritorious defense. Medical Arts states that "Defendants assert that they did not breach any contracts with Plaintiff, they did not misappropriate any of Plaintiff's trade secrets or confidential information, and they did not engage in any unfair competition against Plaintiff."[4] (ECF No. 54, at 2).

To demonstrate the possibility of a meritorious defense, a defendant must "make[] a factual showing that 'would permit a finding for the defaulting party.'" *Acosta v. Vera's White Sands Beach Club, LLC*, No. 8:16-cv-00782-PX, 2019 WL 1767147, at *2 (D.Md. Apr. 22, 2019) (quoting *Russell v. Krowne*, No. 08-cv-2468-DKC, 2013 WL 66620, at *2 (D.Md. Jan. 3, 2013)); *see also Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) ("A meritorious defense requires a proffer

---

[4] Timilon has not alleged any claims for misappropriation of trade secrets or confidential information or unfair competition.

13

of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim."). "A movant's burden for proffering a meritorious defense is not onerous; all that is necessary 'is to allege sufficient facts that, if true, would constitute a defense.'" *Acosta*, 2019 WL 1767147, at *2 (quoting *Russell*, 2013 WL 66620, at *2).

Neither Medical Arts nor any other Defendant have met this minimal burden. None have presented an affidavit, declaration, or any facts in support of an argument that Defendants did not breach any contract with Timilon. (ECF No. 54); *see also Choice Hotels Int'l*, 2021 WL 5494535, at *2. The conclusory statement that Defendants did not breach any contract with Timilon is insufficient to raise the possibility of a meritorious defense. *See Kihn v. Vavala*, No. 8:18-cv-02619-PX, 2019 WL 2492350, at *2 (D.Md. June 14, 2019) ("A meritorious defense must be more than a conclusory statement of fact[.]"); *see also Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F.Supp.2d 712, 718 (D.Md. 2001) (quoting *Consol. Masonry & Fireproofing, Inc. v. Wagman Const. Corp.*, 383 F.2d 249, 252 (4th Cir. 1967)) (noting that a "bare allegation of a meritorious defense" is not sufficient). Because Defendants "fail[] to provide the court with a satisfactory explanation of the merits of [their] alleged defense[,]" the first *Payne* factor weighs against vacating entry of default. *Sanabria v. Cocody,*

14

*Inc.*, No. 16-cv-0365-DKC, 2017 WL 4947047, at *2 (D.Md. Nov. 1, 2017).

### b. Reasonable Promptness

Defendants assert that "Defendants acted promptly to retain counsel and file motions to vacate the default after learning that defaults had been entered against them.  This demonstrates Defendants' intent to diligently defend against Plaintiff's claims." (ECF No. 54, at 2).

"[A] party attempting to set aside an entry of default must act with reasonable promptness in responding to the entry of default[.]" *Nat'l Liab. & Fire Ins. Co. v. Rooding*, No. 15-cv-2572-ELH, 2016 WL 5144493, at *7 (D.Md. Sept. 21, 2016) (quoting *Wainwright's Vacations*, 130 F.Supp.2d at 718).  Defendants' motion to vacate the entry of default was due on March 3, 2024, (*see* ECF Nos. 34; 35; 36; 38; 39; 40), and EJC timely filed the original motion to vacate entry of default on March 3, 2024, (ECF No. 45). When a defendant responded timely to the Clerk's entry of default but delayed the proceeding for months by evading service, a court in this district found that this factor did not support vacating entry of default.  *Dominion Fin. Servs.*, 2022 WL 4631072, at *4. Because the original motion to vacate entry of default was filed timely but Defendants also delayed proceedings by evading service,

the second *Payne* factor weighs only slightly in favor of vacating entry of default.[5]

### c. Personal Responsibility of the Defaulting Party and History of Dilatory Action

Defendants argue that their failure to respond timely to the complaint was not willful because:

> The individual defendants, Allyson Abrams and Diana Williams, were dealing with serious personal and family medical issues that prevented them from engaging counsel and responding to the lawsuit by the deadline. The business entity defendants were not properly served with the complaint and summons. Defendant[]s lacked the requisite notice in order for them to be able to respond. The Defendant[]s Medical Arts should have been included in the original motion to vacate and were left off due to an inadvertent mistake.

(*Id.*).

---

[5] Defendants' timeliness in filing the original motion supports a finding of excusable neglect for its delay in filing the third amended motion to vacate entry of default, which Timilon asserts is really a reply to Timilon's opposition. In determining whether a party has shown excusable neglect, courts consider the "danger of prejudice to [the non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993). In addition to the argument that Defendants acted promptly in filing the original motion to vacate, Medical Arts asserts that Dr. Abrams and Dr. Williams suffered from serious personal and family medical issues which prevented them from obtaining counsel and responding to the suit. (ECF No. 54, at 2). While it does not argue that the medical issues prevented them from timely filing the third amended motion, the stated medical issues also help support a finding of excusable neglect.

The third and fifth *Payne* factors can be addressed together. *See Nat'l Liab. & Fire Ins.*, 2016 WL 5144493, at *7. "The third factor pertains to whether the defaulting party was personally responsible for the default and the fifth factor considers whether there is a 'history of dilatory action.'" *Id.* (quoting *Colleton*, 616 F.3d at 417). "In considering personal responsibility, district courts in the Fourth Circuit have found that default judgment 'is reserved only for cases where the party's noncompliance represents bad faith or complete disregard for the mandates of procedure and the authority of the trial court.'" *First Am. Fin. Corp. v. Homefree USA, Inc.*, No. 1:12-cv-02888-ELH, 2013 WL 2902856, at *4 (D.Md. June 12, 2013), *report and recommendation adopted*, No. 12-cv-2888-ELH, 2013 WL 6080178 (D.Md. July 8, 2013) (quoting *Russell*, 2013 WL 66620, at *3).

The court determined on September 1, 2023 that Dr. Abrams and Dr. Williams had actual notice of the litigation and were evading service. (ECF No. 13, at 5, 8, 11-12). In Timilon's motion for extension of time to complete service and for alternative service, it provided evidence—supported by a sworn declaration—that Timilon's counsel engaged in discussions with MyVision's counsel Mr. Barnes, who stated multiple times that he had talked to Dr. Williams about the case. (ECF No. 12-2, at 2-3, 5, 7, 12, 15). Defendants had ample time to obtain counsel and respond between the filing of the complaint on April 28, 2023 and filing of the

17

motion for entry of default judgment on January 30, 2024. Defendants, however, did not respond to the suit until 30 days after the clerk entered default. *See Dominion Fin. Servs.*, 2022 WL 4631072, at *4 (finding a history of dilatory behavior and denying motion to vacate entry of default where the defendant evaded service).

Defendants' evasion of service and delay in responding are particularly egregious because of the history of dilatory action before Timilon even filed suit. The invoice is dated April 5, 2022. (ECF No. 32-1, at 4). Defendants delayed paying the invoice for over a year until Timilon filed the complaint on April 28, 2023. (ECF No. 1). Timilon has submitted evidence—supported by a sworn declaration—that Dr. Abrams and Dr. Williams repeatedly acknowledged their obligation to pay the invoice, stated that payment would be made, and failed to make payment. (ECF No. 32-1, at 1-2, 6, 8, 10-85). As of June 2024, Defendants still have not paid the invoice.

Defendants' evasion of service and delays in paying the invoice and in responding to the suit despite having actual notice support a finding of bad faith. Although Medical Arts asserts that Dr. Abrams and Dr. Williams were dealing with serious personal or family medical issues that prevented them from engaging counsel and responding to the lawsuit, it offers no declaration in support. *See Choice Hotels Int'l*, 2021 WL 5494535, at *2 ("A party's own

statement, without significant corroboration, is insufficient to overcome the return of service."). Thus, *Payne* factors three and five weigh against vacating entry of default.

### d. Prejudice

"When deciding whether to vacate default, as in many other contexts, simple delay does not, in and of itself, constitute prejudice to the opposing party." *Russell*, 2013 WL 66620, at *3 (citing *Colleton*, 616 F.3d at 418). Defendants argue that Timilon will not suffer any prejudice if the default is vacated because "[t]his case is still in the very early stages—no scheduling order has been entered, no discovery has occurred, and no trial date has been set. Plaintiff will have a full and fair opportunity to litigate its claims against Defendants on the merits." (ECF No. 54, at 2). Timilon has not explained how it will be prejudiced by anything other than the delays. This *Payne* factor weighs slightly in favor of vacating entry of default.

### e. Availability of Sanctions Less Drastic

Courts have concluded that sanctions less drastic than final judgment can "include monetary sanctions for the costs of litigating the entry and setting aside of the default order." *Acosta*, 2019 WL 1767147, at *4 (citing *Trs. of Sheet Metal Workers' Local Union No. 5 & Iron Workers Emp'rs Ass'n, Emp. Pension Tr. v. R. Stoddard, LLC*, No. 17-cv-3286-GJH, 2019 WL 1128518, at *2 (D.Md. Mar. 8, 2019) ("It is an appropriate lesser sanction to award

attorneys' fees when a party defaults.")).  In *Dominion*, in which defendant similarly evaded service, the court determined that despite the availability of imposing "costs associated with [plaintiff's] considerable efforts at service . . . it would be inappropriate to excuse behavior as evasive as [defendant's] by allowing him another opportunity to answer [plaintiff's] claims." *Dominion Fin. Servs.*, 2022 WL 4631072, at *4.  The same is true here.  This *Payne* factor therefore weighs only slightly in favor of vacating entry of default.

The reasonable promptness, prejudice, and availability of sanctions less drastic *Payne* factors support vacating entry of default, and the meritorious defense, personal responsibility, and history of dilatory action factors militate against vacating entry of default.  As in *Dominion*, the egregiousness of Defendants' delays, along with the lack of a meritorious defense, outweigh factors two, four, and six.  *Id.* at *4.  Thus, the second and third amended motions to vacate entry of default filed will be denied.

**B. Motion for Entry of Default Judgment**

**1. Choice of Law**

As a threshold matter, the court must first determine which state substantive law applies to Timilon's claims.  A court "sitting in diversity looks to the choice-of-law rules of the forum state." *Robertson v. Ross*, No. 8:21-cv-0143-PX, 2021 WL 2895887, at *2 (D.Md. July 9, 2021) (first citing *Ground Zero Museum*

*Workshop v. Wilson*, 813 F.Supp.2d 678, 696 (D.Md. 2011); then citing *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007)).  "In Maryland, courts apply the law of the state where the contract was made." *Id.* (citing *Balt. Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F.Supp.3d 574, 587 (D.Md. 2019)).  "A contract is made where the last act necessary to make the contract binding occurs." *Id.* (citing *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md.App. 476, 490 (2002)).

The complaint does not identify where the last act necessary to make the contract binding occurred, although it does allege that Dr. Abrams and Dr. Williams, who are Maryland citizens, requested to purchase the air purifiers and that Timilon installed the air purifiers in the District of Columbia, Maryland, Virginia, and Georgia.  (ECF No. 1 ¶¶ 6, 8 15, 19, 21).  As will be explained, Timilon's provision of the air purifiers constituted acceptance and therefore was the last act necessary to make the contract binding.  The complaint does not specify in which state Timilon first provided the air purifiers.  Because it is unclear where the contract was formed, neither party discusses choice of law, and courts need not address choice of law sua sponte, the court will assume that Maryland law governs.  *See Summit Invs. II v. Sam's E., Inc.*, No. 3:23-cv-479-RCY, 2024 WL 2882870, at *5 (E.D.Va. June 7, 2024)) (assuming that the forum state law governs where "the parties have not explicitly briefed choice of law[]" and "both

seem to accept that Virginia law governs . . . [b]ecause a court need not address choice-of-law issues sua sponte[]"); *cf. Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 781 (4th Cir. 2023) ("[C]hoice of law is not jurisdictional.  A party abandons any claim that a different state's law should govern the action if it fails to raise that issue before or during trial.").

### 2. Liability

In determining whether entry of default judgment is proper, the court must first determine whether Timilon has alleged a legitimate cause of action and whether the well pleaded allegations support a finding of liability.  *Trs. of Nat'l Elec. Benefit Fund*, 2024 WL 473805, at *2 (citing Fed.R.Civ.P. 55(a)).

### a. Counts I, II, and III:  Breach of Contract, Fraud, and Piercing the Corporate Veil

"To state a claim for breach of contract under Maryland law, the plaintiff must establish that 'the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'"  *Reamer v. State Auto. Mut. Ins. Co.*, 556 F.Supp.3d 544, 550 (D.Md. 2021), *aff'd*, No. 21-2432, 2022 WL 17985700 (4th Cir. Dec. 29, 2022) (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)).

In Count I, Timilon alleges that Defendants breached the contract because:  (1) "[t]he Invoice is a valid and enforceable contract entered into between Timilon, EJC, Medical Arts, and

MyVision[;]" (2) "Timilon performed all of its obligations under the Invoice, specifically by supplying 3,000 units of the Air Purifiers to EJC, Medical Arts, and MyVision[;]" (3) "[p]ursuant to the Invoice, EJC, Medical Arts, and MyVision were to tender payment in the amount of $2,397,000.00 to Timilon for the Air Purifiers[;]" (4) "[n]o payment of the Invoice has been tendered by any of EJC, Medical Arts, MyVision, or any other person or entity[;]" (5) "Abrams and Williams personally promised to tender payment in the amount of $2,397,000.00 to Timilon for the Air Purifiers pursuant to the Invoice[;]" (6) "[d]espite repeated demands by Timilon and repeated promises by Defendants, Defendants have failed to tender payment in the amount of $2,397,000.00 to Timilon for the Air Purifiers pursuant to the Invoice[;]" (7) "EJC [], EJC[W], Medical Arts and/or MyVision materially breached the terms of the Invoice by failing to tender payment in the amount of $2,397,000.00 to Timilon for the Air Purifiers pursuant to the Invoice[;]" (8) "[u]pon information and belief, EJC and MyVision are merely corporate façades and are the alter-egos of Abrams and Williams, who fraudulently induced Timilon into entering into and performing under the Invoice, such that Abrams and Williams are personally liable for EJC and MyVision's breach of the Invoice[;]" (9) "Defendants' breach of the Invoice is without excuse or justification[;]" and (10) "[a]s a direct and proximate result of Defendants' material breach of the Invoice, [] Defendants are

liable to Timilon for breach of contract and damages[] in an amount at least equal to $2,397,000.[00] plus applicable interest, late fees, and collection costs."  (ECF No. 1 ¶¶ 48-57).

Timilon alleges that the invoice itself constitutes a contract.  (ECF No. 1 ¶ 47).  It does not expressly identify the offer, acceptance, and consideration, nor does it allege when the contract was formed or when it supplied the air purifiers.  *See Montage Furniture Servs., LLC v. Regency Furniture, Inc.*, 966 F.Supp.2d 519, 524 (D.Md. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co. of Am.*, 392 F.3d 114, 123 (4th Cir. 2004)) ("Under Maryland law, '[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'").  Timilon alleges that "[t]he IAQ Initiative Project began in March of 2022 and Timilon was approached by Abrams and Williams and asked to provide goods and services in furtherance of the project given its expertise in air purification[]" and that "[o]n or around April 5, 2022, as part of the IAQ Initiative Project, EJC [], Medical Arts, and MyVision purchased from Timilon 3,000 Air Purifiers as listed on invoice #11224 [] issued by Timilon.  Each Air Purifier unit cost $799, and the total amount due on the Invoice is $2,397,000.00."  (ECF No. 1 ¶¶ 15, 17).  According to the allegations, therefore, the request of Dr. Abrams and Dr. Williams to purchase the air purifiers constituted an offer, Timilon's delivery of the air purifiers constituted

acceptance, and the $2,397,000 Defendants agreed to pay constituted consideration. *See Atlas Container Corp. v. H. & W. Corrugated Parts, Inc.*, No. 12-cv-0475-WDQ, 2012 WL 3240434, *2-3 (D.Md. Aug. 2, 2012) (holding that although the plaintiff did not define the contract, "the parties made a contract when [defendant] made an offer to buy goods, and [plaintiff] accepted by shipping its products[]"); *see also Transpacific Tire & Wheel, Inc. v. Orteck Int'l, Inc.*, No. 06-cv-0187-DKC, 2010 WL 1375292, at *8 (D.Md. Mar. 30, 2010), *aff'd sub nom. Orteck Int'l v. TransPacific Tire & Wheel, Inc.*, 457 F. App'x 256 (4th Cir. 2011) (quoting Md. Code Ann., Com. Law § 2-206(1)(b)) ("Unless otherwise indicated by the offeror, '[a]n order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or nonconforming goods[.]'"). The invoice, therefore, constituted only a written confirmation of the earlier contract. *See Terry's Floor Fashions, Inc. v. Georgia-Pac. Corp.*, No. 5:97-cv-683-BR(2), 1999 WL 33483547, at *4 (E.D.N.C. June 9, 1999) (quoting *Frances Hosiery Mills, Inc. v. Burlington Indus., Inc.*, 285 N.C. 344, 355 (1974)) (holding that the "invoice sent from one party to another constituted 'written confirmation: of previously made oral contract for sale'").

Even if the contract was oral, the invoice is sufficient to satisfy the statute of frauds, which requires "some writing" for

contracts for sales of goods over $500.  Md. Code Ann., Com. Law § 2-201(1); *Frozen Wheels, LLC v. Potomac Valley Home Med., Inc.*, No. 20-cv-2479-CCB, 2021 WL 2226175, at *3 n.3 (D.Md. June 2, 2021) ("Maryland's statute of frauds may be satisfied if a writing in confirmation of a contract and sufficient against the sender is received and the party receiving it has reason to know its contents, unless written notice of objection to its contents is given within ten days after it is received."); *see also Terry's Floor Fashions*, 1999 WL 33483547, at *4 (applying North Carolina's statute of frauds, identical to Maryland's, and holding that "[e]ven though the various orders and agreements to ship may have been oral, the invoices provided by defendant and signed by plaintiff were writings that made the contracts enforceable by providing the relevant terms of the contracts and satisfying the statute of frauds.").

Taking the factual allegations in the complaint as true, Timilon has sufficiently alleged that a contract existed between it, EJC, Medical Arts, and MyVision, and that EJC, Medical Arts, and MyVision breached the contract by failing to pay Timilon for the provision of the air purifiers.  It is less clear whether Timilon has plausibly alleged that EJCW, Dr. Abrams, and Dr. Williams breached the contract.  Timilon includes EJCW in the group of Defendants who breached the contract, but it does not allege that it was a party to the contract.  It does allege that Dr.

Abrams and Dr. Williams made the initial offer to purchase the air purifiers and "are in charge of" EJC and EJCW "and run them together without distinction under the title of 'EJC.'" (ECF No. 1 ¶ 14). Such a conclusory allegation lacking any factual support is insufficient to state a claim for breach of contract against EJCW.

To determine whether Timilon has stated a claim for breach of contract against Dr. Adams and Dr. Williams, it is necessary first to decide whether Timilon has pled sufficient facts to permit piercing the corporate veil. Under Maryland law, "[a] party may seek to pierce the corporate veil when "'necessary to prevent fraud or enforce a paramount equity.'" *Macsherry v. Sparrows Point, LLC*, No. 15-cv-0022-ELH, 2015 WL 6460261, at *11 (D.Md. Oct. 23, 2015) (quoting *Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. 724, 733 (2003)). Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The Rule 9(b) heightened standard 'requires a plaintiff to plead with particularity the circumstances constituting fraud,' which include 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Fid. & Guar. Life Ins. Co. v. United Advisory Grp.,*

*Inc.*, No. 13-cv-0040-WDQ, 2014 WL 346630, at *8 (D.Md. Jan. 29, 2014) (quoting *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013)).

To state a claim for fraud under Maryland law, Timilon

> must allege five elements with particularity:
> (1) the defendant made a false statement of
> fact; (2) the defendant knew the statement was
> false or acted with reckless disregard for the
> truth of the statement; (3) the defendant made
> the statement for the purpose of defrauding
> the plaintiff; (4) the plaintiff reasonably
> relied on the false statement, and (5) the
> plaintiff was damaged as a result.

*Putsche v. Alley Cat Allies, Inc.*, No. 17-cv-255-PWG, 2018 WL 784615, at *13 (D.Md. Feb. 8, 2018) (quoting *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F.Supp.2d 452, 465 (D.Md. 2013)).

In Count III, Timilon alleges that Defendants defrauded it because: (1) "Defendants sought out Timilon to supply the Air Purifiers[;]" (2) "Timilon supplied the Air Purifiers to Defendants pursuant to the Invoice, and installed them at a number of faith establishments, day cares and classrooms around the District of Columbia, Maryland, Virginia and Georgia[;]" (3) "[i]t did so because it was promised payment for its provision of the Air Purifiers by Abrams and Williams, on behalf of EJC, Medical Arts, and MyVision. Abrams and Williams represented themselves as being pastors and persons of high integrity[;]" (4) "[i]nstead, and upon information and belief, Defendants never intended to pay Timilon for the Air Purifiers and instead intended to string

28

Timilon along, hoping Timilon would not press for payment.  Upon information and belief, Defendants knew at the time of entering into the Invoice that they had no intention of ever paying the Invoice[;]"  (5) "[u]pon information and belief, Defendants conspired to defraud Timilon by making numerous misrepresentations that payment(s) on the Invoice would be forthcoming for nearly a year, each time concocting new reasons why payment was delayed[;]"  (6) "[i]ndeed, in certain instances Defendants, through Abrams and Williams, suggested that payment had been received from donors or investors to pay the Timilon Invoice, yet Timilon never received any of that money.  Upon information and belief, Defendants used the Invoice to fundraise so that they could take the monies for other purposes[;]"  (7) "Timilon reasonably relied on the representations of Defendants to its detriment[;]"  (8) "[a]s a direct and proximate result of Defendants' fraud, Timilon has been damaged in the amount at least equal to $2,397,000.00 plus applicable interest."  (ECF No. 1 ¶¶ 63-70).

Timilon has not alleged with particularity that at the time that Defendants entered into the contract, they knew that the statement that they would pay for the air purifiers was false or acted with reckless disregard for the truth of the statement.  Such an allegation upon information and belief is insufficient to satisfy the heightened pleading standard under Rule 9(b).  Timilon therefore has not stated a legitimate cause of action for fraud.

Even if Timilon had stated a claim for fraud, it has not pled sufficient facts to show that piercing the corporate veil is necessary to prevent fraud or to enforce a paramount equity. "Courts have described as 'herculean" the challenge facing a party seeking to pierce the corporate veil on these grounds." *Coastal Spray Foaming, LLC v. Reynolds Home Sols., Inc.*, No. 17-cv-00701-JMC, 2017 WL 2242666, *2 (D.Md. May 23, 2017) (quoting *Balt. Line Handling Co. v. Brophy*, 771 F.Supp.2d 531, 553 (D.Md. 2011)); *see also Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md.App. 294, 319 (1999) ("Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil.").

To show that piercing the corporate veil to prevent fraud is necessary, a plaintiff "cannot rely on a preponderance of the evidence but must rather 'present[] clear and convincing evidence.'" *Balt. Line Handling*, 771 F.Supp.2d at 553-54 (quoting *Residential Warranty Corp.*, 126 Md.App. at 308) (denying the motion for default judgment because although the defendant may have "us[ed] the corporate entities under her control to evade her legal and contractual obligations," she had not pled facts that "add up to a clear and convincing case of fraud[]"). *Balt. Line Handling*, 771 F.Supp.2d at 554.

The same is true here. Timilon's allegations do not go so far as to provide "clear and convincing evidence" of Defendants'

"deliberate intention" to defraud Timilon by entering into a contract without ever intending to pay the invoice or by using the invoice to fundraise in order to use the monies for other purposes. *Id.* (quoting *Colandrea v. Colandrea*, 42 Md.App. 421, 432 (1979)).

Nor has Timilon alleged facts showing that piercing the veil is necessary to enforce a paramount equity. Judge Quarles has explained the paramount equity doctrine:

> While the Maryland Court of Appeals has declined to outline the precise circumstances that would warrant piercing the corporate veil to enforce a paramount equity, the court has explained that, "the courts may consider a corporation as unencumbered by the fiction of corporate entity . . . in order to prevent the evasion of legal obligations," and may also pierce a corporate veil where "the stockholders themselves, or a parent corporation . . . fail to observe the corporate entity, operating the business or dealing with the corporation's property as if it were their own." *See Hildreth v. Tidewater Equip. Co.*, 378 Md. 724, 734, 838 A.2d 1204, 1209 (2003).
>
> The latter circumstance, often deemed the "alter ego doctrine," may be constituted where the corporation is "inadequately capitalized, fails to observe corporate formalities, fails to issue stock or pay dividends, or operates without a profit," is "insolvent at the time of the transaction," where there is "commingling of corporate and personal assets," and where corporate records are notably absent. *Hildreth*, 378 Md. At 735, 838 A.2d at 1210 (quoting 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.10 at 574-46 (1999)); *see also DeWitt Truck Brokers, Inc. v. W. Ray Flenvning Fruit Co.*, 540 F.2d 681, 685 (4th Cir. 1976) ("When substantial

31

> ownership of all of the stock of a corporation in a single individual is combined with other factors clearly supporting disregard of the corporation fiction on grounds of fundamental equity and fairness, courts have experienced little difficulty and have shown no hesitancy in applying . . . the "alter ego" theory . . . .").

*Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. 13-cv-0040-WDQ, 2016 WL 158512, at *3-4 (D.Md. Jan. 12, 2016). Piercing the corporate veil to enforce a paramount equity is not favored in Maryland. *Residential Warranty Corp.*, 126 Md.App. at 307 ("Despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland Courts."). Timilon has not alleged that Dr. Abrams and Dr. Williams "disregard[ed] the corporate fiction" by, for example, grossly undercapitalizing EJC, EJCW, Medical Arts, or MyVision, siphoning corporate funds, or failing to maintain corporate records. *See Residential Warranty Corp.*, 126 Md.App. at 307. Although Timilon alleges that "EJC and MyVision are merely corporate façades and are the alter-egos of Abrams and Williams[,]" it has not pleaded sufficient facts that make this allegation plausible. (ECF No. 1 ¶ 55).

Because Timilon has not plausibly alleged that piercing the corporate veil is necessary to prevent fraud or to enforce a paramount equity, it has failed to plead facts sufficient to

justify its allegation that Dr. Abrams and Dr. Williams are personally liable on its breach of contract theory.

To summarize, Timilon has alleged a legitimate cause of action for breach of contract against EJC, Medical Arts, and MyVision, and it has not alleged a legitimate cause of action for fraud or veil piercing against any of the Defendants.

### b. Counts II and IV:   Promissory Estoppel and Unjust Enrichment

Promissory estoppel and unjust enrichment are quasi-contract claims under which a party may not recover if "it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties[.]" *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.3d 593, 609 (D.Md. 2015) (quoting *Jay Dee/Mole Joint Venture v. Mayor and City Council of Baltimore*, 725 F.Supp.2d 513, 531 (D.Md. 2010)) (discussing promissory estoppel); *see also Wells Fargo Bank, N.A. v. Gateway Int'l Logistics, Inc.*, No. 1:22-cv-02487-JRR, 2023 WL 2473255, at *7 (D.Md. Mar. 13, 2023) (discussing unjust enrichment); *Swedish Civ. Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F.Supp.2d 785, 792 (D.Md. 2002) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 n.8 (2000)) ("It is only upon a showing that an express contract exists that the unjust enrichment or promissory estoppel count fails."). When addressing similar motions for

33

default judgment, courts decline to consider the plaintiff's quasi-contract claims after determining that it had alleged a legitimate cause of action for breach of contract. *See, e.g.,* *Wells Fargo Bank*, 2023 WL 2473255, at *6 (declining to grant default judgment on claim for unjust enrichment after finding that an enforceable contract existed); *E. Reg'l Med. Ctr., Inc. v. Wills*, No. 15-cv-0313-GJH, 2016 WL 1214739, at *2 n.1 (D.Md. Mar. 23, 2016) (declining to grant default judgment on claims for quantum meruit and unjust enrichment after finding that an enforceable contract existed); *E. Reg'l Med. Ctr., Inc. v. Newcomb*, No. 1:14-cv-00136 WDQ, 2014 WL 4798947, at *3 (D.Md. Sept. 25, 2014) (declining to grant default judgment on claims for unjust enrichment and promissory estoppel after finding that an enforceable contract existed).

Because an enforceable contract exists between Timilon, EJC, Medical Arts, and MyVision, Timilon cannot recover under its promissory estoppel and unjust enrichment claims against EJC, Medical Arts, and MyVision. Because EJCW, Dr. Abrams, and Dr. Williams were *not* parties to the contract, however, it is appropriate to determine whether Timilon has stated a claim for promissory estoppel and unjust enrichment against EJCW, Dr. Abrams, and Dr. Williams.

To state a claim for promissory estoppel or detrimental reliance under Maryland law, a plaintiff must allege:

> (1) a clear and definite promise; (2) where
> the promisor has a reasonable expectation that
> the offer will induce action or forbearance on
> the part of the promisee; (3) which does
> induce actual and reasonable action or
> forbearance by the promisee; and (4) causes a
> detriment which can only be avoided by the
> enforcement of the promise.

*Goss v. Bank of Am., N.A.*, 917 F.Supp.2d 445, 451 (D.Md.), *aff'd sub nom. Goss v. Bank of Am., NA*, 546 F.App'x 165 (4th Cir. 2013) (quoting *Pavel Enterprises, Inc. v. A.S. Johnson Co.*, 342 Md. 143, 166 (1996)).  "Promissory estoppel offers a vehicle to enforce a promise for which there is no consideration, but the plaintiff nonetheless relied upon the promise to his detriment in circumstances that make it unconscionable not to enforce the promise."  *Id.* (quoting *Edell & Assocs., P.C. v. L. Offs. of Peter G. Angelos*, 264 F.3d 424, 440 (4th Cir. 2001)).

In Count II, Timilon advances a claim for promissory estoppel against Dr. Abrams and Dr. Williams.  (ECF No. 1 ¶¶ 58-61).  Specifically, it alleges that:  (1) "Abrams and Williams induced Timilon into entering the Invoice with the clear and definite promise that Timilon would be paid for the Air Purifiers in the amounts listed on the Invoices, and their promises did result in Timilon entering into the Invoice and supplying the Air Purifiers[;]" (2) "Timilon has not been paid on the Invoice despite these clear and definite promises of payment, which have continued well after the issuance of the Invoice.  This detriment can only

be avoided if Timilon is paid as required under the Invoice[;] and (3) "as a direct and proximate result of Defendants' promises, Timilon has been damaged in an amount at least equal to $2,397,000.00 plus applicable interest, late fees, and collection costs." (*Id.*).

Taking Timilon's factual allegations as true, it has sufficiently stated a claim for promissory estoppel. Accordingly, Timilon has legitimately alleged a cause of action for promissory estoppel against Dr. Abrams and Dr. Williams.

To state a claim for unjust enrichment under Maryland law, a plaintiff must allege:

> 1. A benefit conferred upon the defendant by the plaintiff;
> 2. An appreciation or knowledge by the defendant of the benefit; and
> 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151 (2000) (internal quotation marks omitted) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n.7 (2000)).

In Count IV, Timilon advances a claim for unjust enrichment against all Defendants. (ECF No. 1 ¶¶ 72-78). Specifically, it alleges that: (1) "Timilon provided the Air Purifiers according to the terms of the Invoice to various establishments . . . at the direction of Defendants[;]" (2) "Defendants received the benefit

36

of these Air Purifiers by way of their increased standing in the community and by way of other reputational benefits[;]" (3) Timilon "expended substantial time and resources in excess of $400,000 to develop, oversee, and implement the overall IAQ Initiative Program communications, site assessments, systems positioning, installations, and training plans and processes of the Air Purifiers . . . Timilon normally charges for these types of services, but given the purpose of the IAQ Initiative Program, Timilon did not charge EJC Corporation, Medical Arts, or MyVision . . . Defendants, however, have retained the benefit of all of these additional services[;]" (4) "Defendants have acknowledged the beneficial impact of Timilon's provision of the Air Purifiers and additional work beyond the requirements of the Invoice[;]" (5) "Defendants have fundraised monies from donors and investors in order to pay the Invoice. Despite this, no such monies have been paid to Timilon[;]" (6) "Defendants have failed to pay Timilon for the Air Purifiers. It would thus be unjust for Defendants to enjoy the benefits of the Air Purifiers without payment to Timilon for same[;]" (7) "Defendants have been unjustly enriched in an amount of at least $2,397,000.00 by virtue of their retaining the benefits of the Air Purifiers without paying Timilon for same." (*Id.*).

Taking Timilon's factual allegations as true, it has sufficiently stated a claim for unjust enrichment. Consequently,

it has alleged a legitimate cause of action for unjust enrichment against EJCW, Dr. Abrams, and Dr. Williams.  Because Timilon is not entitled to duplicative recovery, however, it may only recover under one of its quasi-contract theories.[6]

### 3. Appropriateness of Default Judgment

The next question is whether default judgment is proper.  In making this determination, courts often consider "(1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct."  *United States v. Belzner*, No. 13-cv-2414-WDQ, 2014 WL 1344187, at *1 (D.Md. Apr. 3, 2014), *report and recommendation adopted*, No. 13-cv-2414-WDQ, 2014 WL 2153938 (D.Md. Apr. 23, 2014) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987); *Smith v. Bounds*, 813 F.2d 1299, 1303 (4th Cir. 1987) (relying on these factors in determining whether a default judgment merited reconsideration)).

Timilon will be prejudiced if default judgment is not granted because it has expended considerable resources in supplying 3,000 units of air purifiers to Defendants and has not received any payment.  As discussed above, Defendants have not demonstrated a

---

[6] Timilon's claim for promissory estoppel is only alleged against Dr. Abrams and Dr. Williams, while its unjust enrichment claim also includes EJCW.

meritorious defense.  Finally, Defendants' countless statements that payment would be forthcoming when it was not, as well as delay both in paying the invoice and in responding to this suit, evince culpable misconduct.  Therefore, default judgment is proper.

### 4. Damages

Although the facts pleaded in the complaint are taken as true, Timilon must prove its damages.  In the complaint, Timilon seeks $2,397,000.00, plus applicable interest, late fees, and collection costs under its breach of contract claim; $2,397,000.00 plus interest from the date of invoicing under its promissory estoppel claim; and $2,397,000.00 under its unjust enrichment claim.  (ECF No. 1, at 16).  In Timilon's motion for default judgment, however, it only requests "[d]amages in the amount of $2,397,000.00, plus post-judgment interest at the federal legal rate from the date of judgment until the judgment is paid" and "[a]ny such further relief as justice and equity may require."  (ECF No. 32, at 8). Similarly, in its proposed order, it requests $2,397,000.00 plus post-judgment interest.  (ECF No. 32-2, at 2).

Timilon has provided evidence that it suffered compensatory damages of $2,397,000.  The invoice provides that Timilon will supply 3,000 "EnviroKlenz Air System Plus (UV), White" units at a price of $799 each for a total of $2,397,000.  (ECF No. 32-1, at 4).  It also states:  "Bill To Empowerment Justice Center Corporation" and "NOTE: FUNDED BY MEDICAL ARTS CAPITAL GROUP.

JOINT VENTURE WITH MY VISION FOR EMPOWERMENT CENTER CORPORATION 501C3." (*Id.*).  Timilon has also provided ample evidence that Defendants were aware of their obligation to pay the invoice.  (ECF No. 32-1, at 6, 8, 20-86).  No hearing is necessary because the record supports the damages requested.  *Laborers' Dist. Council Pension*, 2010 WL 1568595, at *3.

Accordingly, Timilon will be awarded $2,397,000 in compensatory damages plus interest at the federal rate from the date of judgment until the judgment is paid in full.[7]  Although Timilon has alleged legitimate causes of action under both contract (against EJC, Medical Arts, and MyVision) and quasi-contract theories (against EJCW, Dr. Abrams, and Dr. Williams), it is not entitled to duplicative recovery.  The practical effect of this judgment is that Timilon cannot recover under both theories, but all Defendants are jointly and severally liable for the $2,397,000 plus interest.

---

[7] Post-judgment interest is automatic and need not be included in the order of judgment.  *See, e.g.*, *Baker's Exp., LLC v. Arrowpoint Cap. Corp.*, No. 10-cv-2508-ELH, 2012 WL 4370265, at *26 n.19 (D.Md. Sept. 20, 2012) (quoting *Dunn v. Hovic*, 13 F.3d 58, 62 (3d Cir.)) ("'[P]ost-judgment interest is awarded by statute as a matter of law so it is automatically added, whether or not the district court orders it,' in every judgment."); *Nat'l Elec. Benefit Fund v. Force Elec., Inc.*, No. 15-cv-1788-TDC, 2016 WL 266448, at *3 (D.Md. Jan. 20, 2016) ("Even if not specified in the judgment, post-judgment interest is awarded by, and calculated pursuant to, 28 U.S.[C]. [§] 1961.").

## IV.   Conclusion

For the foregoing reasons, Timilon's motion to strike will be denied; Timilon's motion for entry of default judgment will be granted as to the request for default judgment against EJC, Medical Arts, and MyVision in Count I (breach of contract), the request for default judgment against Dr. Abrams and Dr. Williams in Count II (promissory estoppel) and the request for default judgment against EJCW, Dr. Abrams, and Dr. Williams in Count IV (unjust enrichment), and denied as to all other requests; the second amended motion to vacate entry of default filed by EJC, EJCW, MyVision, Dr. Abrams, and Dr. Williams will be denied; and the third amended motion to vacate entry of default filed by Medical Arts will be denied.  A separate order will follow.

---
                                    /s/
DEBORAH K. CHASANOW
United States District Judge